IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BILLY JO BARKER, JR.,

             Petitioner,

v.                                    Case No. 10-3055-SAC

DAVID R. MCKUNE, WARDEN,
LANSING CORRECTIONAL FACILILTY, and
KANSAS ATTORNEY GENERAL,

             Respondents.

MEMORANDUM AND ORDER

This case comes before the Court on Petitioner's motion for a writ of

habeas corpus pursuant to 28 USC § 2254. Petitioner, in custody at Lansing,

contends that he was denied his right to effective assistance of trial counsel,

and that his right to due process was violated by a sentence which was the

result of vindictiveness by the trial judge.

**I. Procedural Background**

In 1998, Petitioner was convicted in the District Court of Greenwood

County, Kansas of three counts of Attempted Murder, one count of

Aggravated Assault, one count of Aggravated Battery, one count of

Obstructing Legal Process, and one count of Domestic Battery. Petitioner

was sentenced to 562 months' imprisonment.

In 2000, the Kansas Court of Appeals reversed Petitioner's conviction of Aggravated Assault, reversed and remanded Petitioner's conviction of count one of Attempted Murder, and affirmed all remaining counts. *State v. Barker*, No. 81,092 (Kan.Ct.App. May 26, 2000) (Unpublished Opinion). The Kansas Supreme Court denied review, and the State chose not to retry the remanded count.

In 2001, a different state district court re-sentenced petitioner on the affirmed counts, and again imposed 562 months' imprisonment. Petitioner filed notice of appeal, but voluntarily dismissed it before any decision issued. He thereafter filed a petition pursuant to K.S.A. § 60-1507 in the state district court, which was denied. The Kansas Court of Appeals affirmed that denial, *Barker v. State*, 2009 WL 1212515, No. 99,573 (Kan. Ct. App. May 1, 2009) (Unpublished Opinion), and the Kansas Supreme Court thereafter denied review.

Petitioner then filed this petition for habeas corpus relief pursuant to 28 USC § 2254. This Court denied Respondents' subsequent motion to dismiss this petition as untimely, and now reaches its merits.

**II. Facts**

The facts of the underlying criminal case, as summarized by the Kansas Court of Appeals in Petitioner's state collateral appeal, follow:

> In 1998, Barker was convicted of three counts of attempted murder of a law enforcement officer and single counts of aggravated

battery, aggravated assault of a law enforcement officer, obstructing

legal process, and domestic battery. He was sentenced to 562 months'

imprisonment.

Barker filed a direct appeal. *See State v. Barker,* Case No.

81,092, unpublished opinion filed May 26, 2000. This court

summarized the facts of the case as follows:

On August 19, 1997, Barker discovered Rodney Rogers hiding in

the basement of the Barker residence. Barker suspected that his wife

Pammy and Rogers were having an affair. While in the basement, the

two men fought and Barker stabbed Rogers several times with a knife.

After the brawl, Barker held Rogers captive until Pammy arrived home.

When Pammy returned, the three discussed whether Pammy and

Rogers were having an affair. Rogers eventually left the house and

called police.

Officer Soule investigated the call and took Rogers to the

hospital. Rogers advised Officer Soule not to go to the door of the

Barker residence because Barker had stated that Officer Soule was

"number one" on Barker's list.

The police obtained a search warrant and seven officers went to

the Barker home to execute it. With their weapons drawn, Officers

Soule and Oliver went to the front door and knocked. Officer Soule

noticed the curtain on the front door move and saw the barrel of a

gun. Officer Soule turned to run, but was shot in the neck. Officer Oliver fled from the porch when he heard Officer Soule yell.

After Barker's first shot, the police fired several times into the home. The Barkers retreated to the basement. By most accounts, Barker fired two more shots from a basement window. Officer Winfrey, who was kneeling behind a truck, was struck in the scrotum by a bullet. During this time, Officer Schaefer heard a bullet pass near his head.

Barker was charged with one count of aggravated kidnapping for confining Rogers and one count of kidnapping for using Pammy as a shield or hostage. Barker was found not guilty on both kidnapping charges. Barker was also charged with four counts of attempted first degree murder. He was convicted in three of the counts and found guilty of the lesser included offense of aggravated assault of a law enforcement officer against Officer Oliver. Barker was also convicted of single counts of aggravated battery against Rogers, domestic battery against Pammy, and obstructing legal process.

On Barker's direct appeal, this court held that the district court erred in failing to instruct the jury on the lesser included offense of attempted second-degree murder against Officer Tim Soule … and reversed and remanded the case for a new trial on this charge. This court also held that aggravated assault of a law enforcement officer

was not a lesser included offense of attempted first-degree murder and reversed the conviction. …

On remand, the State decided not to retry Barker for the attempted first-degree murder of Officer Soule. At resentencing, the district court sentenced Barker again to 562 months' imprisonment.

Barker appealed, arguing that his sentence was vindictive. However, Barker voluntarily dismissed this appeal.

Months later, Barker filed a pro se K.S.A. 60-1507 motion alleging: the search of his home was illegal; the search warrant was not valid; he received ineffective assistance of trial counsel; the prosecutor engaged in misconduct during trial; and his resentencing was vindictive. Between August 2002 and February 2004, Barker filed numerous additions and amendments to his motion. While most of Barker's amendments expanded upon his previous allegations, Barker added that his conviction for obstructing legal process was not supported by substantial competent evidence.

After the State responded to Barker's 60–1507 motion, the district court held an evidentiary hearing and requested both parties to submit proposed findings of fact and conclusions of law. The district court adopted the State's findings of fact and conclusions of law and denied Barker's motion, holding that Barker's issues were not properly

before the court, his counsel was not ineffective, and his sentence was
not vindictive.

*Barker,* 2009 WL 1212515 at **1-2.

### III. AEDPA Standard

This matter is governed by the Antiterrorism and Effective Death
Penalty Act of 1996 ("AEDPA"). AEDPA imposes a "highly deferential
standard for evaluating state-court rulings, and demands that state-court
decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. ––––,
130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (citation and internal
quotation marks omitted). Under AEDPA, where a state prisoner presents a
claim in habeas corpus and the merits were addressed in the state courts, a
federal court may grant relief only if it determines that the state court
proceedings resulted in a decision (1) "that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as determined
by the Supreme Court of the United States" or (2) "that was based on an
unreasonable determination of the facts in light of the evidence presented in
the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is "contrary to clearly established Federal law"
when: (a) the state court " 'applies a rule that contradicts the governing law
set forth in [Supreme Court] cases' "; or (b) " 'the state court confronts a
set of facts that are materially indistinguishable from a decision of [the
Supreme] Court and nevertheless arrives at a result different from [that]

6

precedent .' " *Maynard v. Boone*, 468 F.3d 665, 669 (10th Cir. 2006) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct legal rule from Supreme Court case law, but unreasonably applies that rule to the facts. *Id.* at 407–08. Likewise, a state court unreasonably applies federal law when it either unreasonably extends, or refuses to extend, a legal principle from Supreme Court precedent where it should apply. *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).

In reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). In order to obtain relief, a petitioner must show that the state court decision is "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (O'Connor, J., concurring). "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard,* 468 F.3d at 671.

**IV. Due Process Claim**

Petitioner contends that the district court acted vindictively in resentencing him to the same number of months he had received before the reversal of his convictions for Aggravated Assault and one count of Attempted Murder. Respondents assert that this claim is procedurally defaulted because the state court found the issue was not properly before it.

**A. Procedural Bar**

Petitioner raised his claim of vindictive sentencing in his 60-1507 proceeding, but both the state district court and the Kansas Court of Appeals found it had been improperly raised because vindictiveness in sentencing is considered a trial error that must be raised on direct appeal rather than in a collateral proceeding. *Barker,* 2009 WL 1212515 at *4 (citing *State v. Mebane*, 278 Kan. 131, 135 (2004)). Petitioner had raised this issue in a direct appeal he filed after being resentenced, but voluntarily dismissed that appeal before any ruling was made.

This habeas court cannot review a state court decision if that decision rests on a state law ground that is independent of the federal question and is adequate to support it. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). "This rule applies whether the state law ground is substantive or procedural." *Id.* at 729. A state rule "is independent if it relies on state law rather than federal law and is adequate if it is regularly followed and applied

evenhandedly." *Zimmer v. McKune*, 87 F.Supp.2d 1153, 1158 (D.Kan. 2000) (citing *Hickman v. Spears*, 160 F.3d 1269, 1271 (10th Cir. 1998)).

Here, the "independent" requirement is met because the last court to address the issue of vindictive sentencing expressly based its decision on a state procedural bar. *See Harris v. Reed*, 489 U.S. 255, 263 (1989). The "adequate" requirement is met as well, as that state procedural bar is a "firmly established and regularly followed state practice" and is applied to all similar claims in an evenhanded manner in the majority of cases. *See Messer v. Roberts*, 74 F.3d 1009, 1015 (10th Cir. 1996) (citations omitted). It is a well-established and regularly followed Kansas rule of procedure that trial errors must be raised on direct appeal and, absent exceptional circumstances, cannot be raised in a K.S.A. 60-1507 proceeding. *See* Kan. Sup. Ct. R. 183(c) (3); *State v. Bledsoe*, 283 Kan. 81, 88-89 (2007) (finding prosecutorial misconduct must be raised on direct appeal and is not properly raised in a collateral proceeding unless it affected a constitutional right and exceptional circumstances are shown excusing the failure to appeal on that issue); *Mebane, supra* (holding judge's allocution error at resentencing should have been raised on direct appeal and not in K.S.A. 60-1507 motion).

Federal habeas review of these claims is thus barred unless Petitioner demonstrates either: 1) cause for his procedural default, and resulting prejudice; or 2) that a fundamental miscarriage of justice will result if his claims are not considered. *See Coleman,* 501 U.S. at 749; *Fairchild v.*

*Workman*, 579 F.3d 1134, 1141 (10th Cir. 2009). Petitioner does not allege or demonstrate cause for his failure to present these claims to the state court. *See Coleman*, 501 U.S. at 750 (finding that " 'cause' under the cause and prejudice test must be something external to the petitioner.") Neither has Petitioner shown actual prejudice. The "cause and prejudice" exception is thus not applicable.

Nor has Petitioner demonstrated that he qualifies for review under the fundamental miscarriage of justice exception. *See Herrera v. Collins*, 506 U.S. 390, 403–04 (1993). To be excused from procedural default on the basis of this exception, petitioner must supplement his constitutional claim with a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *Brecheen v. Reynolds*, 41 F.3d 1343, 1356 (10th Cir. 1994), *cert. denied*, 515 U.S. 1135 (1995). Petitioner fails to do so. *Cf. United States v. Hickok*, 907 F.2d 983, 985 n. 2 (10th Cir. 1990) (finding defendant's assertion of his subjective belief in his own innocence insufficient). Accordingly, these claims are procedurally barred from federal habeas review.

**B. Merits**

But even if the Court were to examine the merits of this issue, it would find no basis for granting the writ of habeas corpus. Under Kansas law, there is no presumption of vindictiveness where one's penalty is not increased upon resentencing, thus a defendant must affirmatively prove

10

actual vindictiveness by the district court in imposing the sentence, and not merely the court's adoption of the State's "bitter" recommendation. *See State v. Cooper*, 275 Kan. 823 (2003) (finding no presumption of vindictiveness and no evidence of it where trial court resentenced defendant to same sentence upon remand); *State v. Register,* 192 P.3d 689 (Table) (2008).

Kansas law is consistent with federal law. The Due Process Clause of the Fourteenth Amendment "... requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *North Carolina v. Pearce*, 395 U.S. 711, 725 (1969). *Pearce* established that a rebuttable presumption of vindictiveness arises, in violation of a defendant's due process rights, when a defendant receives an increased sentence after a successful appeal. 395 U.S. at 724. *See Selsor v. Workman,* 644 F.3d 984 (10th Cir. 2011); *United States v. Rourke,* 984 F.2d 1063, 1066 (10th Cir. 1992) ("[ *Pearce* ] requires that when a judge resentences a defendant to a harsher punishment, she must affirmatively state her reasons for doing so." (citation omitted)).

But application of that presumption is limited to circumstances in which there is a "reasonable likelihood" that an unexplained increase in sentence is the product of actual vindictiveness on the part of the sentencing judge. *Alabama v. Smith*, 490 U.S. 794 (1989). *See Wasman v. United*

*States*, 468 U.S. 559, 563 (1984). Where there is no such reasonable likelihood, the defendant has the burden of proving that "actual vindictiveness" caused the higher sentence, without the aid of a presumption. *Alabama*, 490 U.S. at 799-800. *See United States v. Medley*, 476 F.3d 835, 839-40 (10th Cir. 2007).

Where, as here, a defendant receives the same sentence on remand as he initially received, no presumption of vindictiveness arises. *See United States v. Flinn*, 18 F.3d 826, 830 (10th Cir. 1994) ("In the absence of evidence of actual vindictiveness, resentencing will not be considered vindictive if the defendant did not receive a net increase in his sentence."); *see also United States v. Smith*, 930 F.2d 1450, 1456 (10th Cir. 1991) ("The argument that a resentencing to the same term of incarceration is 'more severe' because it is supported by different aspects of defendant's conduct is simply nonsensical."). Because Petitioner's penalty was not increased on resentencing, no presumption of vindictiveness appears.

It is true that the resentencing court ordered certain sentences to run consecutively, rather than concurrently as was initially ordered. But that fact does not raise a presumption of vindictiveness under Kansas or federal law, where the length of the controlling sentence is not increased. *See State v. Merrills,* 37 Kan.App.2d 81 (2007); *State v. Heywood,* 245 Kan. 615, 615–16 (1989). A presumption of vindictiveness will not arise when, as here, "a different judge imposes the second sentence and provides an on-the-record,

12

wholly logical, nonvindictive reason for the sentence." *Macomber v. Hannigan*, 15 F.3d 155, 156 (10th Cir. 1994) (quotation omitted); *see Monks v. Massie*, 153 F.3d 727 (Table) (10th Cir. 1998) (finding no presumption of vindictiveness where different judge resentenced defendant to two consecutive life sentences but defendant was initially sentenced to two concurrent indeterminate sentences of ten years' to life).

Petitioner thus has the burden to prove actual vindictiveness. Petitioner alleges no facts to meet this burden, but for the identical length of his original and subsequent sentences. Nonetheless, in an abundance of caution, the Court has reviewed the record and finds it contains no indication of vindictiveness on the part of the district court after remand.

When one of the conviction counts "is set aside or vacated, the district court is free to reconsider the sentencing package de novo unless the appellate court specifically limited the district court's discretion on remand." *United States v. Smith*, 116 F.3d 857, 859 (10th Cir.) (citations omitted), *cert. denied*, 522 U.S. 903 (1997). Here, the court's discretion was not limited on remand. *See State v. Barker*, No. 81,092 (Kan.Ct.App. May 26, 2000) (Unpublished Opinion). Although Petitioner had fewer convictions on resentencing, he remained convicted of two counts of attempted murder of law enforcement officers. The sentencing judge found that the case was unusual and that aggravating factors were present. He sentenced Petitioner for his two attempted murder convictions within the parameters of the

Kansas Sentencing Guidelines, carefully explaining his reasoning, and his rationale for running them consecutively. (R. Case No. 97-CR-129, XIV, 27-32, 35-36.) The sentencing court refrained from adding consecutive sentences for Petitioner's other convictions which would have extended his sentence beyond that initially imposed. (R. Case No. 97-CR-129, XIV, 36-37.) Nothing in the comments made by the sentencing court during resentencing, or in the sentence Petitioner received, or in any other matter of record tends to show any vindictiveness whatsoever on the part of the sentencing court. Thus Petitioner has failed to prove actual vindictiveness.

Petitioner has not shown that the state court's resentencing was contrary to, or an unreasonable application of, clearly established federal law.

## V. Ineffective Assistance of Counsel

Petitioner additionally claims that his trial counsel was ineffective in various ways.

### A. Legal Standards

"When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, ___ U.S.___, ___, 131 S.Ct. 770, 788 (2011). Thus Petitioner's burden on this habeas review is to show that there is no reasonable argument that

14

his trial counsel satisfied *Strickland's* deferential standard. *See White v. Medina*, 2012 WL 401518, *2 (10th Cir. 2012).

To prevail on a claim for ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700.

Although counsel's duty to conduct a thorough investigation of possible mitigating evidence is well established, *see, e.g., Rompilla v. Beard*, 545 U.S. 374, 387 (2005), "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. An applicant who challenges his counsel's effectiveness because of his failure to investigate must establish that the decision not to investigate was unreasonable from counsel's perspective at the time the decision was made. *See Anderson v. Attorney Gen. of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005).

**B. Merits**

### 1. General Failure to Investigate

First, Petitioner generally claims that his trial counsel was ineffective for "failing to investigate the charges," and "file any pre-trial motions." Dk. 1, p. 6, para. 16(B). Petitioner never raised this general claim before the

state courts, so to the extent this represents a new claim or is broader than the claims he previously raised, it is unexhausted and procedurally defaulted. See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

## 2. Failure to Investigate Validity of Warrant

More specifically, Petitioner claims his counsel was ineffective for failing to investigate whether police officers had a valid warrant when they executed the search of his home. Petitioner alleges that the search occurred on August 19, 1997 but a lawful search warrant was not obtained until the following day. Petitioner contends that the August 19th warrant was invalid because its affidavit, executed at 3:30 p.m., stated that at approximately 11:30 a.m., Barker arrived at his home, found Rogers, and kept him there for approximately 5 hours. Petitioner contended that if Rogers was held for 5 hours starting at 11:30 a.m., he would not have been released until 4:30 p.m., an hour after the application was allegedly made for the first search warrant. The affidavit for the second search warrant reiterated the 5–hour hostage period.

The Kansas Court of Appeals reviewed this claim and found that based on the facts known to counsel at the time of trial, it was not unreasonable for Petitioner's counsel to decline to investigate this matter. Barker, 2009 WL 1212515 at *5-6. Counsel testified at the K.S.A. 60-1507 hearing that he looked into the timing issues and found nothing that he believed would have undermined the validity of the search warrant. (R. Case No. 02-C- 47, VI,

16

56-58.) Additionally, Judge John Sanders' testified at the evidentiary hearing that he signed the search warrant and checked the date and time before signing the warrant. *Id*, at *5. Officer Soule testified that he had a warrant when he went to Barker's residence.

The Kansas Court of Appeals noted the following: 1) although there might have been some discrepancies or misstatements regarding the timing of events set forth in the warrant application, they were not significant; 2) there was no reason to believe that the discrepancies were the result of government misconduct or fraud; and 3) the testimony of the judge who signed the warrant supported the fact that it was in effect at the time officers went to Petitioner's home. *Barker* at *5-6. It thus found that Petitioner's counsel had no objectively reasonable basis to further question the timing or existence of the warrant, and made an objectively reasonable decision to direct his efforts into other aspects of the case.

The Court of Appeals' ruling was objectively reasonable.  Its determination was neither contrary to, nor an unreasonable application of United States Supreme Court precedent, nor was it based on an unreasonable determination of the facts. Therefore, this claim affords no basis for federal habeas relief.

### 3. Failure to Request Certain Instructions

The Petition includes a third claim of IEC – that trial counsel was constitutionally ineffective by failing to request instructions on self-defense

17

or no duty to retreat as to Count VII (Aggravated Battery of Rodney

Rogers). Dk. 1, p. 3. On direct appeal, the Kansas Court of Appeals

examined a related issue - the court's failure to instruct on this theory,

stating:

> Barker did not argue self-defense at trial nor did he present any
> evidence which would justify the trial court's giving of the instruction.
> Clearly, Barker was the aggressor in the attack against Rogers. Barker
> repeatedly threatened Rogers. Rogers was unarmed when Barker
> pulled a knife and attacked him. As a result, there is no real possibility
> that the jury would have acquitted Barker on the aggravated battery
> charge had it been instructed on self-defense or no duty to retreat.

*Barker*, No. 81,092, p. 10.

Petitioner also previously claimed that counsel was ineffective in failing

to request instructions on self-defense or no duty to retreat. In resolving

Petitioner's appeal from the denial of his K.S.A. 60-1507 motion, the Court

of Appeals found no deficient performance and no showing of prejudice. In

reaching that conclusion, it noted the following: 1) no evidence presented at

trial would justify giving the self-defense instruction or the no-duty-to-

retreat instruction, since the defendant never stated that he acted in self-

defense; 2) the no-duty-to-retreat instruction is required only infrequently,

such as where a nonaggressor defendant is followed to and menaced on his

home ground; 3) to justify the giving of a self-defense instruction, the

evidence must support both the subjective and the objective components of the defense, thus a defendant must show his sincere and honest belief that it was necessary to kill to defend himself, and that a reasonable person under the same circumstances would have perceived self-defense as necessary; 4) although defendant was in his home when the attack took place, he was clearly the initial aggressor - he threatened to kill Rogers and cut him with a knife, although Rogers was unarmed; and 5) no real possibility existed that the jury would have acquitted defendant on the aggravated battery charge had the court given the desired instructions.

This Court's role in evaluating jury instructions is limited—it looks only to determine if instructional errors "had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in a constitutional sense." *Shafer v. Stratton,* 906 F.2d 506, 508 (10th Cir. 1990) (quotation omitted).  *See also Nichols v. Sullivan,* 867 F.2d 1250, 1253 (10th Cir.) ("the scope of our review is narrow: our responsibility is to ensure that [petitioner] was afforded the protections of due process, not to exercise supervisory powers over the [state] courts."), *cert. denied,* 490 U.S. 1112, (1989); *Gaines v. Hess,* 662 F.2d 1364, 1368 (10th Cir. 1981) (when faced with a habeas corpus petition challenging state trial proceedings, the court's review is limited to errors of constitutional magnitude.).

Thus Petitioner must show that the failure to provide the instruction so deprived him of due process that it caused his trial to be fundamentally

unfair. *See Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995) (stating lack of a jury instruction must be "fundamentally unfair"), *cert. denied*, 514 U.S. 1115 (1995). Due to the wide discretion given to trial courts in constructing jury instructions, "a defendant is not entitled to an instruction" unless there is "a reasonable legal and factual basis" to support such instruction. *United States v. Bryant*, 892 F.2d 1466, 1468 (10th Cir. 1989), *cert. denied*, 496 U.S. 939 (1990)).

After reviewing the record and the reasoning of the Kansas Court of Appeals, the Court finds counsel's failure to request the desired instructions did not render the trial so fundamentally unfair as to deny Petitioner a fair trial or deny him due process.

## VI. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Proceedings states that the court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has rejected the constitutional claims on the merits, a petitioner makes that showing by demonstrating that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). *See United States v. Bedford*, 628 F.3d

1232 (10th Cir. 2010). Petitioner has not met this standard as to any issue presented, so no certificate of appealability shall be granted.

IT IS THEREFORE ORDERED that the petition for habeas corpus relief under 28 U.S.C. § 2254 (Dk. 1) is denied.

Dated this 8th day of January, 2013, at Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge